*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. R. WATKINS , Minor.

UNPUBLISHED
September 21, 2023

No. 365074
Wayne Circuit Court
Family Division
LC No. 2019-001681-NA

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, KRW, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (i), and (j). Because the trial court did not clearly err when it found that clear and convincing evidence supported a statutory ground for termination and that termination was in the child's best interests, we affirm.

## I. BACKGROUND

In July 2019 respondent's son KML sustained a burn on his hand from respondent's lit cigarette. A treating physician suspected that the injury was nonaccidental and alerted Child Protective Services (CPS). The CPS investigation concluded that KML and his younger sister KRW, then nine months old, were not safe in respondent's care because of physical abuse, respondent's mental health issues, financial instability, and imminent homelessness. In September 2019 petitioner, the Department of Health and Human Services ("DHHS"), petitioned the court requesting that it take temporary custody of the children and remove them from respondent's care. After respondent entered a plea of admission, the court found statutory grounds to assume jurisdiction over the children. KML was placed with his maternal grandparents and KRW was placed in a non-relative licensed foster home. The children would remain in these placements for the duration of the case. In October 2019, the trial court ordered respondent to comply with a treatment plan designed to address her mental health issues, improve her parenting skills, and assist her in acquiring stable housing and income.

For more than 2½ years, respondent was offered a multitude of services which she participated in but failed to benefit from. Accordingly, in June 2022, DHHS petitioned the court to terminate respondent's parental rights to both KML and KRW. The trial court concluded that statutory grounds to terminate respondent's parental rights to both children were established by

clear and convincing evidence and that termination of respondent's parental rights was in KRW's best interests. However, the court did not find that termination was in KML's best interests. The court found that that KML would be better served if he remained with his maternal grandparents pursuant to a guardianship. Respondent now appeals the termination of her parental rights to KRW.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent challenges the trial court's findings regarding the existence of statutory grounds for termination. After reviewing the record, we conclude that the trial court did not clearly err in finding that the statutory grounds were established under MCL 712A.19b (3)(c)(*i*), (c)(*ii*), (g), and (j). The trial court did clearly err in finding that termination of respondent's parental rights was justified under MCL 712A.19b(3)(i), but this error was harmless because only one statutory ground must be established to support termination of parental rights, "even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis,* 294 Mich App 30, 32; 817 NW2d 111 (2011).

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo,* 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Long,* 326 Mich App 455, 460; 927 NW2d 724 (2018).

The trial court terminated respondent's parental rights to KRW under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (i), and (j), which provide:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable

-2-

expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* *

  (i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions the led to the prior termination of parental rights.

  (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights to KRW under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). After the court authorized the petition and removed the children, respondent entered a plea of admission in October 2019. Respondent admitted that KML was burned by her lit cigarette, that she was soon to be homeless, that she had no plan for alternative housing, and that she had attempted suicide a few weeks earlier. During the dispositional hearing that followed, respondent was ordered to comply with and benefit from a service plan designed to address respondent's mental health issues, improve her parenting skills, and assist her in establishing suitable income and housing. Approximately 2½ years later, DHHS filed a supplemental petition seeking termination of respondent's parental rights. The petition alleged that respondent failed to benefit from the services offered.

We recognize that many witnesses testified that respondent was in substantial compliance with her case service plan. However, DHHS presented evidence that respondent did not benefit from the treatment plan, specifically from the parenting classes she completed. Indeed, despite brief periods when she was granted unsupervised parenting time, respondent never progressed to the point that overnight visits with KRW were possible. The case aide who supervised the visits testified that respondent was unable to parent both children at the same time. Despite three years of services, respondent continued to struggle with implementing appropriate discipline and engaging with the children. Respondent's parenting ability remained a barrier to reunification.

In August 2021, almost two years after the children were removed from her care, respondent was deemed to be in compliance with her treatment plan. She was attending parenting classes, visitations, and individual counseling. She had suitable housing and had maintained the same employment for four months. Despite these positive findings, a new circumstance hindered respondent's reunification efforts. A caseworker observed respondent's then fiancé pull KML's arm in a hostile manner. This event gave DHHS concern regarding respondent's ability to safely parent her children and protect them from risk of harm.

There were also ongoing concerns that respondent could not appropriately parent her children because of her mental health issues. According to her treating psychiatrist, respondent suffered from bipolar disorder, attention deficit hyperactivity disorder (ADHD), and borderline personality disorder. Respondent was compliant with her medication and therapy, but there was clear and convincing evidence that, despite this compliance, respondent continued to have

-3-

moments of crisis that would put her children at risk in her care. Shortly after DHHS filed the petition in September 2019, respondent was hospitalized for a suicide attempt. Fifteen months later, in January 2021, respondent again attempted suicide, which resulted in her hospitalization. During a March 2021 psychological evaluation, respondent reported that she had been hospitalized for symptoms of depression and thoughts of self-harm eight times in the preceding 10 years. Clear and convincing evidence supported the trial court's conclusion that respondent's mental health continued to be a barrier to reunification.

This conclusion is further supported by the testimony of the children's maternal grandmother and KML's long-time caregiver. The grandmother testified that she occasionally saw some improvement in respondent's parenting ability, but at other times she did not see any progress. She was most concerned about the children being in respondent's care when respondent was experiencing one of her "off days." On these occasions, respondent would shut down and not want to talk or be around anybody. The grandmother questioned whether respondent would be able to communicate with school administrators, teachers, and specialists involved in KML's care.

The evidence further supports the trial court's finding that respondent struggled with maintaining employment and securing suitable housing. It took her 18 months to obtain an apartment suitable for visits with the children. Throughout the case respondent had multiple jobs but she rarely was able to maintain employment at any given place for more than a month. When the bench trial began, respondent was unemployed. While there was some testimony that respondent had secured a job by the end of the bench trial, she had not verified the employment with her caseworker.

The foregoing evidence clearly and convincingly demonstrated that, at the time of termination, the conditions that led to the adjudication, and other conditions that arose thereafter, continued to exist. Further, the record clearly established that these conditions were not rectified and that there was no reasonable likelihood that respondent would be in a position to safely and appropriately parent her children within a reasonable time. Termination of parental rights under § 19b(3)(c)(*i*) is warranted when "the totality of the evidence amply supports" a finding that the parent has not achieved "any meaningful change" in the conditions that led to the trial court assuming jurisdiction of the child. *In re Williams,* 286 Mich App 253, 272; 779 NW2d 286 (2009). Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under § 19b(3)(c)(*i*) and (c)(*ii*).

Considering the same evidentiary record, the court also did not clearly err when it also found clear and convincing evidence to terminate respondent's parental rights under §§ 19b(3)(g) and (j). A parent's failure to benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody such that there is a reasonable likelihood the child will be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014).

The trial court did clearly err when it found that termination was warranted under MCL 712A.19b(3)(i) (parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse…). Although DHHS presented evidence that respondent's parental rights to another child were previously terminated, there was no evidence that respondent's rights were terminated due to serious and chronic neglect, physical

-4-

abuse, or sexual abuse. Thus, the trial court clearly erred by finding that termination was established by clear and convincing evidence under MCL 712A.19b(3)(i). However, this was harmless error because only one statutory ground must be established to terminate parental rights. See *Ellis*, 294 Mich App at 32.

## B. REASONABLE EFFORTS

Respondent also argues that the trial court erred by terminating her parental rights because DHHS failed to make reasonable efforts to reunite her with the child. Respondent argues that DHHS did not refer her to additional, specialized parenting classes after the trial court ordered such services. We review a trial court's finding that "reasonable efforts were made to preserve and reunify the family" for clear error. *In re Fried,* 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

Generally, before a court may contemplate termination of a parent's parental rights, DHHS must make reasonable efforts to reunite the family. MCL 712A.19a(2). The purpose of the treatment plan is to facilitate the return of the child to the parent or to facilitate the child's permanent placement. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). DHHS's statutory duties to update a parent's treatment plan and provide the parent with necessary and relevant reunification services continue throughout the case. *Id.* The adequacy of DHHS's efforts to provide services "may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

Respondent bases her claim on caseworker Meredith Hooker's testimony on the final day of trial in which Hooker indicated that she never re-referred respondent for an additional parenting class despite the trial court ordering it. However, Hooker had only been the assigned caseworker since August 2021, and the record shows that Hooker's predecessor re-referred respondent for an additional parenting class on May 6, 2021. The record further indicates that respondent completed this class as of November 17, 2021. The previous caseworker also referred respondent to a parent-partner program but, unfortunately, the demand was so great that respondent was put on the waiting list. On the whole, DHHS assisted respondent in her job searches, helped her obtain housing, referred her for two psychological evaluations, offered two parenting classes, coordinated parenting time visits, and referred respondent for individual counseling and family therapy. Considering the totality of DHHS's efforts, it is clear that DHHS made reasonable efforts at reunification.

## C. BEST INTERESTS

Respondent also challenges the trial court's finding that termination of her parental rights was in KRW's best interests. We find no error in this regard.

If a court finds that there are statutory grounds for termination, the court may only terminate parental rights if it finds that termination is in the child's best interests. MCL 712A.19b (5). When considering whether termination is in a child's best interests, a court may consider a variety of factors. *White,* 303 Mich App at 713. These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service

plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *Id.* at 713-714.

"The trial court should weigh all the evidence available to determine the children's best interests." *Id*. at 713. The court's focus must be on the child and not the parent. *In re Moss,* 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id*. at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App 126, 129; 777 NW2d 728 (2009).

KRW was nine months old when she was removed from respondent's care. Two months later, she was placed in a licensed foster home. KRW was doing well in the foster home and all her needs were being met. Further, according to the foster mother, a bond existed between KRW and her foster family, which included two foster siblings. The family was eager and willing to adopt KRW if the court terminated respondent's parental rights.

A preponderance of the evidence suggested that KRW would be at risk of harm in respondent's care. Respondent was unwilling or unable to make meaningful changes to establish the stability necessary to properly parent KRW and provide her with a safe home environment. When considering a child's best interests, the court may consider the advantages of a foster home over the parent's home. *In re Olive/Metts,* 297 Mich App 35, 42; 823 NW2d 144 (2012). In this case, a preponderance of the evidence supports a finding that the foster family's home was preferable to respondent's home because it would provide KRW with the care she required to facilitate her continued growth and development.

The trial court also considered KRW's need for security and stability. KRW had been a ward of the court for more than three years. The instability caused by respondent's failure to make meaningful changes in her life was taking its toll on KRW. The child started to hide when it was time to leave for visits with respondent and she was exhibiting behavioral issues after the visits. The termination of respondent's parental rights would give KRW an opportunity to benefit from the stability and permanence her foster family was willing to provide.

Respondent argues that termination of her parental rights was not in KRW's best interests because a strong parent-child bond existed. There was evidence that KRW recognized respondent as her mother and would show her affection at parenting time. However, the testimony established that the bond between respondent and KRW was significantly strained. Both the foster mother and the case aide testified that in the couple of months before the trial, KRW started to object to going to parenting time. Indeed, the case aide who transported KRW and then supervised the visits testified that she essentially bribed KRW with a treat to encourage her cooperation with attending visits. Further, on multiple occasions, KRW would ask to return to the foster home before the visits were scheduled to end. On the basis of this testimony, the nature of the bond between respondent and KRW was weakened over the significant length of time it took for respondent to become compliant with her service plan. Accordingly, the existence of a bond was not a strong factor that weighed in favor of preserving respondent's parental rights.

It is apparent from the record that the trial court properly weighed appropriate factors when considering KRW's best interests. The trial court recognized that respondent's parenting ability

continued to be adversely affected by her mental health and that KRW needed stability in her life. A preponderance of the evidence weighed in favor of terminating respondent's parental rights. Accordingly, the trial court did not clearly err.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly